**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SHIRLEY ABREU O/B/O/ A.M. MINOR CHILD<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Civil Action No. 2:11-CV-04942-SDW<br><br><br>**OPINION**<br><br><br>September 6, 2012 |

**Wigenton, District Judge**

Before the Court is Ms. Shirley Abreu's ("Abreu" or "Plaintiff") appeal, on behalf of her minor daughter, A.M., of the final administrative decision of the Commissioner of Social Security ("Commissioner"), with respect to Administrative Law Judge James Andres' ("ALJ") denial of Plaintiff's claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). The Commissioner, pursuant to Local Civil Rule 9.1, seeks a judgment affirming the final decision that Plaintiff was not disabled and, therefore, not entitled to disability insurance benefits under the Act.

This Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Venue is proper under 28 U.S.C. § 1391(b).

This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated herein, this Court **REMANDS** this matter for further clarification in accordance with this opinion.

**FACTUAL AND PROCEDURAL HISTORY**

On April 16, 2008, Plaintiff filed for SSI on behalf of A.M., a minor, claiming disability as of March 26, 2008. (R. at 10, 122; Compl. 1.) Plaintiff's claim was denied initially on August 6, 2008 and upon reconsideration on April 7, 2009. (R. at 10.) On April 13, 2009, Plaintiff filed a request for a hearing before an Administrative Law Judge. (R. at 77.) On July 6, 2010, a hearing took place ("July 6, 2010 Hearing") before Administrative Law Judge, James Andres ("ALJ"). (Compl. ¶ 1.) On July 23, 2010, the ALJ issued a written decision, in which he concluded that Plaintiff is not disabled ("ALJ's Decision"). (R. at 21.) On June 23, 2011, Plaintiff sought review of the ALJ's Decision and was denied. (R. at 1; Pl.'s Compl. 1.) On October 30, 2011, Plaintiff filed a Complaint with the District Court seeking review of the ALJ's Decision. (Dkt. No. 1.) On January 23, 2012, Plaintiff filed the instant motion seeking reversal of the Commissioner's final decision and remand for reconsideration. (Dkt. No. 10.)

a. *Medical and Psychological History*

On May 27, 2008, Kimberly Crowley ("Crowley"), a teacher at M.S. #7, completed a Teacher Questionnaire ("Teacher Questionnaire") provided by the Social Security Administration ("SSA"), Division of Disability Determinations Services ("DDS"). (R. at 138.) Crowley indicated that she had seen A.M. "every day" for one year. (*Id.*) Compared to the functioning of same-aged children who do not have impairments, Crowley reported that A.M. experienced obvious limitations in her ability to acquire and use information with respect to: (1) comprehending oral instruction; (2) reading comprehension; (3) mathematic computation; (4)

2

expressing ideas in written form; (5) learning new material; (6) recalling and applying previously learned material; and (7) applying problem-solving skills in class discussion. (R. at 139.) Compared to the functioning of same-aged children who do not have impairments, Crowley reported that A.M. experienced slight limitations in her ability to acquire and use information with respect to: (1) understanding school and content vocabulary; (2) understanding and participating in class discussion; and (3) providing organized oral explanations and descriptions. (*Id*.)

With respect to A.M.'s ability to attend to and complete tasks, Crowley indicated that Plaintiff has a serious problem of daily frequency in carrying out multi-step instructions, waiting to take turns, changing activities without being disruptive, remaining organized, completing homework, completing work without careless mistakes, and working without distracting herself and others. (R. at 140.) Crowley indicated that A.M. had a very serious problem of daily frequency in working at a reasonable pace and finishing tasks on time. (*Id*.) In addition, Crowley indicated that A.M. experiences slight to obvious problems with respect to her ability to interact with and relate to others. (*See* R. at 141.) Crowley indicated that A.M. did not suffer any limitations in her ability to move about and manipulate objects nor in her ability to care for herself. (R. at 142-43.) Crowley noted having to remove A.M. from the classroom and suspend A.M. as a result of poor behavior. (R. at 141.)

On June 4, 2008, A.M. went to Dr. Hooshang Sadeghi ("Dr. Sadeghi"), who first saw A.M. on March 26, 2008, in Bayonne, New Jersey. (R. at 173-74.) Dr. Sadeghi recorded that A.M. was a thirteen and one half year-old, complaining of distraction at school and loss of focus, and had improved to some degree upon taking Ritalin. (R. at 173.) Dr. Sadeghi diagnosed A.M.

with Attention Deficit Disorder ("ADD") and suggested that A.M. continue taking Ritalin at the same dosage previously prescribed. (R. at 174.)

On July 30, 2008, Jennifer C. Figurelli, Ph.D. ("Dr. Figurelli") performed a psychological evaluation of A.M. upon request by the DDS. (R. at 175.) Dr. Figurelli reported that A.M. was born premature, at twenty-eight weeks, on August 29, 1994. (R. at 173.) Dr. Figurelli indicated that A.M. was retained in the first and fourth grades because, according to Abreu, A.M. did not follow directions, had a short attention span, and did not complete assignments. (*Id*.) Dr. Figurelli further indicated that A.M. was given a 504 Accommodation Plan, extended time to complete school work, and was placed in an inclusion program in the sixth grade. (*Id*.)

Dr. Figurelli reiterated Abreu and A.M.'s admission that since taking medication, A.M. "is listening in school and completing school work, . . . [d]irections seldom have to be repeated and [A.M.] completes tasks[,] . . . [and] some of [A.M.'s] grades went from an F to an A and others went from a C to a B+." (*Id*.) Dr. Figurelli also reported that A.M. was able to recall three of five words after five minutes and was able to do double digit calculations. (R. at 177.) However, A.M. was unable to complete a "series seven" arithmetic problem due to lack of concentration. (Id.) Dr. Figurelli's diagnostic impression of A.M. indicated "Attention Deficit Disorder without hyperactivity" and no Axis II or Axis III diagnoses. (*Id*.)

On February 27, 2009, Susan F. Dellert, MD ("Dr. Dellert") of the Center for Children with Special Needs, performed a neurodevelopmental evaluation of A.M. (R. at 198.) A.M. was referred for evaluation of her Attention Deficit Hyperactivity Disorder ("ADHD"). [1] (*Id*.) Based

---

[1] This diagnosis is in conflict with Dr. Sadeghi's June 4, 2008 diagnosis of ADD. (R at 174.) This is the first time in the record that the ADHD diagnosis appears. (R. at 198.) Dr. Dellert's report indicates that Plaintiff was referred by Dr. Najib for Plaintiff's alleged ADHD. (*Id*.) The record contains only one medical report from Dr. Najib, dated May 19, 2008. (R. at 172.) The report indicates that Plaintiff has a history of "hyperactivity" and "decreased attention span"; however, Dr. Najib did not provide a diagnoses or treatment plan in this report. (*Id*.) Thus, there is conflicting, or at least unclear, evidence in the record regarding Plaintiff and treatment for ADD or ADHD.

on the medical history provided, and the Conners' Rating Scales[2] completed by Abreu and A.M.'s teacher, Dr. Dellert concluded that A.M.'s current 20mg dose of Ritalin was no longer effective.  (R. at 198, 200.)  Dr. Dellert included the Conners' Teacher Rating Scale in her report, showing that on her current dose of Ritalin, A.M.'s T-Scores were "(1) Inattention: 84; (2) Hyperactivity: 53; (3) Learning Problems/Executive Functioning: 69; (4) Aggression: 46; and (5) Peer Relations: 53."  (R. at 199.)  Dr. Dellert noted that A.M. complained of adverse side effects such as nervousness and "weird" feelings when taking Ritalin.  (R. at 198.)  Because of these adverse side effects, including nervousness, Dr. Dellert concluded that A.M. should try a different medication.  (R. at 198, 200.)  Thus, Dr. Dellert diagnosed A.M. with ADHD, inattentive type, and proscribed Adderall XR 10mg, to be adjusted as needed.  (R. at 200.)

On December 30, 2009, Dr. Dellert issued a letter urging that A.M. remain enrolled in the 504 Accommodation Plan at her school, M.S. #7.  (R. at 138, 197.)  In support of this request, Dr. Dellert indicated that "[A.M.] has been trying to succeed academically but her symptoms of ADHD sometimes impede her progress and medication does not adequately treat all of her symptoms."  (R. at 197.)

b.  *A.M.'s Testimony*

At the July 6, 2010 Hearing, A.M. testified that she was a rising 10th grade student, enrolled in special education.  (R. at 30.)  A.M. testified that she had trouble completing homework assignments and focusing, and that she became bored easily.  (R. at 30, 31.)  A.M. also admitted often zoning out in class.  (R. at 47.)  A.M. testified that she has been in special education since being diagnosed with ADHD and that she was held back in the first and fourth grades.  (R. at 33.)  A.M. also testified that she was held back because of her grades and that it

---

[2] Conner's Rating Scales are used to assess or evaluate attention deficit and hyperactivity disorder in children and adolescents.  *See* http://www.minddisorders.com/Br-Del/Conners-Rating-Scales-Revised.html (last visited Sept. 4, 2012).

was "very, very, very hard" for her to study or keep up with the other students. (R. at 33.) A.M. explained that an inclusion teacher sits next to her in class and helps A.M. understand what is being taught. (R. at 34.) In addition, A.M. testified that she receives extra help during her lunch period with math and language arts. (R. at 35.)

Despite the extra help, inclusion teacher, and special education classes, A.M. testified that she was still receiving D's and C's in school. (R. at 36-38.) A.M. testified that she only had one best friend. (R. at 44.) A.M. further testified that she does not have many friends at school, and prefers going to the mall over going to parties. (*Id*.) A.M. remembers learning algebra but could not answer the question, "if 4x equals 4, what would x be[.]" (R. at 49.) A.M. testified that she had read one chapter of an assigned book for summer reading but could not remember what the chapter was about. (R. at 50.) A.M. testified that it would take her approximately thirty minutes to write down approximately one page of thoughts and that she struggles with spelling. (R. at 51.) A.M. testified that it takes her thirty minutes to shower, thirty minutes to do her hair, and fifteen minutes to put on her clothes. (R. at 55, 56.)

    c. *Abreu's Testimony*

Abreu also testified at the July 6, 2010 Hearing. (R. at 57.) She noted for the record that Adderall has improved A.M.'s concentration, better than the previously prescribed Ritalin, and that the school's 504 Accommodation Plan has helped A.M.'s performance in school. (R. at 58.) Abreu also noted that A.M. needs to be reminded to do things that an ordinary fifteen or sixteen-year-old would do without being reminded. (R. at 59.) Abreu also testified that A.M. became distracted and frustrated after five to six minutes of playing with a handheld videogame that Abreu's ten-year-old daughter plays for thirty to forty minutes at a time. (R. at 60, 61.) Abreu testified that she is unable to give A.M. a list of items with $20.00 and trust her to go to the store

and come back with the proper items and/or change.  (R. at 61, 62.)  Although A.M. is able to prepare a bowl of cereal for herself, Abreu testified that her daughter is unable to make French toast.  (R. 62, 63.)  Finally, Abreu confirmed A.M.'s statement that she only has one best friend.  (R. at 63.)  Furthermore, Abreu testified that children at school tease A.M.  (*Id.*).

      d.  *The ALJ's Decision*

The ALJ issued a decision on July 23, 2010 concluding that A.M. suffers from a severe impairment, Attention Deficit Disorder without hyperactivity, but that A.M. does not have an impairment or combination of impairments that medically or functionally equals any of the listings 20 C.F.R. Part 404, Subpt. P, App. 1.  (R. at 13.)  The ALJ found that A.M. has a less than marked limitation in acquiring and using information, a marked limitation in attending and completing tasks, a less than marked limitation in interaction and relating with others, no limitation in moving about and manipulating objects, no limitation in the ability to care for herself, and no limitation in health and physical well-being.  (R. at 16-20.)  Thus, the ALJ imposed a finding of not disabled.  (R. at 20.)

**LEGAL STANDARD**

This court exercises plenary review of all legal issues on an appeal of a decision by the Commissioner of Social Security.  *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  This Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions.  *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotations omitted).

Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla'; it is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Bailey*, 354 F. App'x. at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x. 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). This court is required to give deference to the ALJ's findings if supported by substantial evidence. *See Scott v. Astrue*, 297 F. App'x. 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz*, 244 F. App'x. at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

In considering an appeal from a denial of benefits, remand is appropriate "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits." *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976)). Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the

claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984).

**DISCUSSION**

A child under the age of 18 is considered disabled if he or she has a "medically determinable physical or mental impairment . . . that causes marked and severe functional limitations, and that can be expected to cause death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.906. The SSA has established a three-step sequential analysis detailing how to determine disability for a child under the age of 18. 20 C.F.R. 416.924(a); *see Watkins v. Comm'r of Soc. Sec.*, 131 F. App'x 362, 364 (3d Cir. 2005) ("20 C.F.R. § 416.924(a)-(d) sets out the three-step sequential analysis for determining child disability."); *see also Jaramillo v. Comm'r of Soc. Sec.*, 130 F. App'x 557, 560 (3d Cir. 2005) ("An examiner makes the . . . three-step evaluation found in 20 C.F.R. §§ 416.924, 416.926a, to determine whether a claimant under the age of 18 is disabled.").

At step one, the ALJ must determine whether a claimant is currently engaging in substantial gainful activity ("SGA"). 20 C.F.R. § 416.924(b). SGA is work that is both substantial and gainful. *See* 20 C.F.R. § 416.972. Substantial work activity "involves doing significant physical or mental activities." 20 C.F.R. § 416.972(a). Gainful work activity "is work activity that you do for pay or profit." 20 C.F.R. § 416.972(b). If a claimant is engaged in SGA, a finding of not disabled will be issued regardless of age, education, or medical experience. *See* 20 C.F.R. § 416.924(b). If a claimant is not engaged in SGA, the ALJ will move on to the next step. *See Solis v. Astrue*, No. 09-2032 (DMC), 2011 WL 2609864, at *8 (D.N.J. June 30, 2011).

At step two, the ALJ must determine whether a claimant has a medically determinable impairment that is severe. *See* 20 C.F.R. § 416.924(a). A medically determinable impairment is not severe if the impairment "is a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations." 20 C.F.R. § 416.924(c). If the claimant suffers from a severe medically determinable impairment(s), the ALJ moves on to step three. *See* 20 C.F.R. § 416.924(a); s*ee also Solis*, 2011 WL 2609864, at *8.

At step three, the ALJ will determine whether a claimant's "medically determinable severe impairment meets, medically equals, or functionally equals a listing . . . in 20 C.F.R. Part 404, subpart P, Appendix 1." *Watkins*, 131 F. App'x at 364. The ALJ must consider "the combined effect of all of [claimant's] impairments without regard to whether any such impairment" would be sufficient if considered separately. 20 C.F.R. § 416.923. The ALJ must also consider the "interactive and cumulative effects of one or more impairments . . . in any affected domain(s)." 20 C.F.R. § 416.926a(c). If a claimant has an impairment(s) that meets or medically equals, or functionally equals, the requirements of a listing, the ALJ will issue a finding of disabled. 20 C.F.R. § 416.924(d)(1).

To meet the requirements of the listing for ADHD, a claimant must satisfy both paragraphs A and B of 20 C.F.R. Part 404, Subpt. P, App. 1, § 112.11. Under paragraph A, a claimant must demonstrate marked inattention, marked impulsiveness, *and* marked hyperactivity. In addition, a claimant's impairment(s) under paragraph A must result in at least two of the appropriate age-group criteria in paragraph B2 of 112.02: (a) marked impairment in age-appropriate cognitive/communicative function; (b) marked impairment in age-appropriate social functioning; (c) marked impairment in age-appropriate personal functioning; or (d), marked difficulties in maintaining concentration, persistence, or pace. *See Watkins*, 131 F. App'x at 364

(analyzing whether child's ADHD met or equaled Listing 20 C.F.R. Part 404, Subpt. P, App. 1 § 112.11).

Medical equivalency can be determined by the hearing officer during the disability hearing process. 20 C.F.R. § 416.926. A child's impairment(s) medically equals a listed impairment "if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a). If a claimant has an impairment described in the listings but (1) does not exhibit one or more of the specified findings, or (2) exhibits all of the findings but one or more of them is of a lesser severity than specified, the ALJ will find medical equivalency if the claimant demonstrates other findings related to her impairment that are at least of equal medical significance to the required criteria. 20 C.F.R. § 416.926(b)(1)(i) – (ii). When determining whether an impairment medically equals a listing, the ALJ will consider all of the evidence in a claimant's case record about the claimant's impairment(s) and its effects on the claimant relevant to a finding of medical equivalence. *Id*.

If "the child's impairment does not medically meet a listing . . . the examiner must determine whether the impairment functionally equals a listing." *Jaramillo*, 130 F. App'x at 560. To determine whether a claimant functionally equals the listings, the ALJ must evaluate the claimant's six domains of functioning: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for self; and (6), health and physical well-being. *See* 20 C.F.R. § 416.926a(b)(1); *Jaramillo*, 130 F. App'x at 561. An impairment functionally equals the listings when a claimant's impairment(s) results in a 'marked'[3] limitation in two domains, or an

---

[3] A claimant suffers a "marked" limitation in any domain when the alleged impairment(s) "interferes seriously with . [claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R § 416.926a(e)(2). "'Marked' limitation also means . . . 'more than moderate' but 'less than extreme'" and represents the level of functioning

11

'extreme'[4] limitation in one domain. 20 C.F.R. § 416.926a(a); *see Morrison ex rel. Morrison v. Comm'r of Soc. Sec.*, 268 F. App'x 186, 187 (2d Cir. 2008) ("An impairment or combination of impairments functionally equals a listed impairment if it causes a 'marked' limitation in two of six areas of functioning or an 'extreme' limitation in one of those six areas.").

  a. *Step One*

At step one, the ALJ must determine whether the claimant is engaged in SGA. Here, the ALJ concluded that claimant is a minor child who has not engaged in SGA since the application date, April 16, 2008. (R. at 13.)

  b. *Step Two*

At step two, the ALJ must determine whether A.M. suffers from any severe impairments. Here, the ALJ determined that A.M. suffers from a severe impairment, Attention Deficit Disorder without hyperactivity that imposes more than a slight limitation on her ability to function. (R. at 13.)

  c. *Step Three*

At step three, the ALJ must consider all of the evidence in the record to determine whether a claimant's impairment(s) meets, medically equals, or functionally equals the listings in 20 C.F.R. Part 404, Subpt. P, App. 1, § 112.11. In the present case, the ALJ found that A.M. "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, [App.] 1." (R. at 13.) The ALJ then provided that "[t]he [A.M.'s] [A]ttention [D]eficit [D]isorder is evaluated under Section 112.11.

---

expected from a claimant with standardized testing scores at least two, but less than three, standard deviations below the mean. *Id*.

[4] A claimant suffers an "extreme" limitation in any domain when the alleged impairment "very seriously" interferes with claimant's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3)(i). "'Extreme' limitation also means a limitation that is 'more than marked'" and is the equivalent of the level of functioning expected from a claimant with standardized testing scores that are at least three standard deviations below the mean. *Id*.

However, the requirements of this Listing have not been met because [subsections] A and B have not been completely satisfied." (*Id*.) The ALJ also found that A.M. "does not have an impairment or combination of impairments that functionally equals the listings." (*Id*.) The ALJ concluded that A.M.: (1) "has less than marked limitation in acquiring and using information;" (2) "has marked limitation in attending and completing tasks;" (3) "has less than marked limitation in interacting and relating with others;" (4) "has no limitation in moving about and manipulating objects;" (5) "has no limitation in the ability to care for herself;" and (5) "has no limitation in health and physical well-being." (R. at 16-20.) As discussed below, Plaintiff objects to the ALJ's finding that A.M.'s impairment is neither medically nor functionally equivalent to a listing, claiming that this decision is not supported by substantial evidence. (Pl.'s Br. 5.)

    1. *Medical Equivalence*

A primary reason why an ALJ's decision should include "a clear and satisfactory explication of the basis on which it rests" is the "need for the appellate court to perform its statutory function of judicial review." *Cotter v. Harris*, 642 F.2d 700, 704-05 (3d Cir. 1981). As such, the ALJ need not only include the evidence he considered in reaching his decision, but also some indication of the evidence rejected. *See id*. "[T]here is a particularly acute need for some explanation by the ALJ when s/he has rejected relevant evidence or when there is conflicting probative evidence in the record." *Cotter,* 642 F.2d at 706. Where the ALJ's step three analysis is limited to a conclusory sentence without providing any reasons why a claimant's impairment(s) does not meet a listing, the ALJ's decision is "beyond meaningful judicial review." *See Torres v. Comm'r of Soc. Sec.*, 279 F. App'x 149, 152 (3d Cir. 2008).

In the instant matter, Plaintiff argues that the ALJ erred by issuing his decision without explanation as required by *Cotter*. (Pl.'s Br. 5, 11.) Defendant responds that the ALJ appropriately evaluated the record in concluding that A.M. fails to meet all of the required criteria in Subsections A and B, noting that the burden of proving medical equivalence lies with Plaintiff. (Def.'s Br. 8.) Defendant submits that because Plaintiff does not contest the ALJ's finding at step two, that A.M. has Attention Deficit Disorder *without* hyperactivity, A.M.'s condition cannot meet or equal the listing because it requires "marked hyperactivity." (*Id.*)

Although the ALJ ultimately finds that A.M. does not have Attention Deficit Disorder of the hyperactive type, he notes Dr. Dellert's conflicting testimony in his decision that A.M. suffers from ADHD. (R. at 15.) Furthermore, the record indicates that Dr. Dellert was referred to A.M. by Dr. Najib, who noted "hyperactivity" in A.M.'s medical history. (R.at 171, 197, 198.) As the ALJ does not provide an explanation as to why he chose to reject this evidence regarding hyperactivity in favor of finding that A.M.'s Attention Deficit Disorder does not include hyperactivity and does not meet the requirements for medical equivalency, this matter will be remanded for further clarification.

    2. *Functional Equivalence*

A claimant is disabled if she demonstrates a marked limitation in two of the six functional domains or an extreme limitation in one domain. 20 C.F.R. § 416.926a(a). Here, the ALJ admitted that A.M. suffers a marked limitation in attending and completing tasks but found only a less than marked limitation in acquiring and using information. (R. at 16, 17.) Plaintiff argues that the ALJ's finding of "less than marked" in this domain is not supported by substantial evidence in the record. (Pl.'s Br. 10.) Specifically, Plaintiff points to the Teacher Questionnaire completed by Crowley wherein Crowley indicates that A.M. has problems functioning in the

domain of acquiring and using information. (Pl.'s Br. 9; R. at 139.) Crowley indicates that A.M.'s problem is "obvious" with respect to comprehending oral instructions, reading and comprehending written materials, comprehending and doing math problems, expressing ideas in written form, learning new material, recalling and applying previously learned material, and applying problem-solving skills in class discussions. (R.at 139.)

The ALJ acknowledged A.M.'s problems in acquiring and using information. (R at 16.) The ALJ noted that A.M. takes medication with favorable results, as well as receives tutoring and additional teachers in the classroom. (*Id.*) The ALJ did not, however, provide an explanation as to the basis for his decision that Crowley's assessment of A.M.'s "obvious" problems in the first functional domain only constitutes a less than marked limitation. This would factor into whether or not A.M.'s impairment is functionally equivalent to the listing for ADHD. Thus, this Court will remand this matter for further clarification.

**CONCLUSION**

For the foregoing reasons, this Court will **REMAND** this matter for clarification in accordance with this opinion.

s/Susan D. Wigenton, U.S.D.J.

Orig: Clerk
cc: Parties